UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

J & J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.

AFTER SIX PRODUCTIONS, INC., d/b/a VISION,

and

JOHN DOE

Defendants.

Action No. 3:13-CV-591

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion for Default Judgment ("Motion") (ECF No. 10) filed by Plaintiff J & J Sports Productions, Incorporated ("JJSP"). On September 3, 2013, JJSP filed a Complaint against Defendant After Six Productions, Incorporated ("ASP"), which does business as Vision, and against an unnamed defendant, John Doe. The Complaint alleges that ASP willfully intercepted a broadcast transmission of a boxing match on September 17, 2011, for commercial purposes in violation of 47 U.S.C. §§ 553 and 605. A hearing was held on Tuesday, February 18, 2014, and the matter is now ripe for review. For the reasons that follow, the Court will GRANT the Motion and AWARD damages in an aggregate amount of $22,321.68.

**BACKGROUND**[1]

Pursuant to a licensing agreement, JJSP obtained the exclusive rights to exhibit the closed-circuit telecast of "Star Power: Floyd Mayweather, Jr. v. Victor Ortiz, Championship Fight Program" and all related programming (collectively, the "Event") at locations throughout

[1] All of the following facts are drawn from JJSP's Complaint, Motion, and attached documents, as Defendants have not responded to the Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court considering a default motion to determine whether a plaintiff's well-pleaded allegations support the relief sought).

Virginia, such as theaters, arenas, bars, restaurants, and the like. The Event occurred on September 17, 2011, but only those commercial establishments in Virginia which had paid JJSP a fee in exchange for closed-circuit rights were authorized to broadcast the Event. JJSP charged a fee of $2,200.00 for commercial establishments with seating capacity of 100 or less, and charged higher fees for establishments with greater seating capacity. JJSP alleges that Defendants could have, but did not, contract with JJSP for the rights to broadcast the Event.

The transmission of the Event was electronically encrypted, or "scrambled," to deter unauthorized entities from broadcasting the Event. In order for the signal to be received and displayed clearly, it had to be decoded with electronic decoding equipment. This equipment was provided to those commercial establishments that contracted with JJSP for closed-circuit broadcast rights. JJSP alleges that it did not provide such equipment to ASP. JJSP further alleges that by virtue of the aforementioned encryption, there is no known means of mistakenly, innocently, or accidentally intercepting broadcasts such as the Event.

JJSP hired Brian Stephens to visit ASP's establishment, Vision, on September 17, 2011, during broadcast of the Event. JJSP alleges that Mr. Stephens was charged a cover fee of $10.00 to enter ASP's establishment, as were all male patrons. JJSP further alleges that Mr. Stephens observed ASP exhibit portions of the Event—specifically, the under-card bout between Jessie Vargas and Joseito Lopez, on September 17, 2011.

On September 3, 2013, JJSP brought suit against ASP for two Counts of violating the Communications Act of 1934. On December 11, 2013, the Clerk of Virginia's State Corporation Commission, as the statutory agent of ASP, was served with a copy of the Summons and Complaint.[2] On January 9, 2014, the Clerk of the Court entered default against ASP. On January 14, 2014, JJSP filed this Motion for Default Judgment to which ASP failed to respond. A hearing was held on February 18, 2014, to conduct an accounting; however, ASP failed to appear.

[2] JJSP also brought this action against an unnamed defendant; however, no service has been made on a second defendant and more than 120 days have passed since the Complaint was filed. As such, this Memorandum Opinion and the accompanying Order pertain only to Defendant ASP.

**LEGAL STANDARD**

A default judgment is "a final disposition of the case and an appealable order that has the same effect as a judgment rendered after a trial on the merits." *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (internal citation and quotation marks omitted). Default judgment is governed by Rule 55(b) of the Federal Rules of Civil Procedure. Before a plaintiff may obtain default judgment, the Clerk of Court must first enter default pursuant to Rule 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Entry of default is an interlocutory order – entered in anticipation of a final judgment – formally recognizing that a party 'has failed to plead or otherwise defend as provided by [the Federal Rules of Civil Procedure].'" *$23,000 in U.S. Currency*, 356 F.3d at 163 (quoting Fed. R. Civ. P. 55(a)).

After the Clerk enters default, either the Clerk or the Court may enter default judgment. The Clerk enters default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. . . ." Fed. R. Civ. P. 55(b)(1). Otherwise, the Court may enter default judgment in its discretion. *See Broglie v. Mackay-Smith*, 75 F.R.D. 739, 741 (W.D. Va. 1977) ("Once a party defaults, the issue of whether to grant or deny a motion for entry of default judgment is a matter largely within the discretion of the trial court.") (citations omitted). Generally, default judgment is warranted if a defendant fails to plead or otherwise defend itself. *See* Fed. R. Civ. P. 55; *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). The party requesting default judgment must show: "(1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services; and (5) that notice has been served on the defaulting party, if required by Fed.R.Civ.P. 55(b)(2)." *JTH Tax, Inc. v. Smith*, No. 2:06-CV-76, 2006 WL 1982762, at *1 (E.D. Va. June 23,

2006). While the Court may hold a hearing when needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter," Fed. R. Civ. P. 55(b)(2), the Court may award relief without a hearing if it is supported by the pleadings, *see Anderson v. Found. For the Advancement, Educ. And Employment of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998).

## DISCUSSION

### A. Requirements for Default Judgment

JJSP has met the requirements of Rule 55(b). Default judgment may properly be entered against ASP. JJSP has not explicitly certified that ASP meets the requirements for an entity against which default judgment may be entered. However, because ASP is a registered Virginia corporation, it is not a minor, incompetent, or a person engaged in military service. *See* Fed. R. Civ. P. 55(b)(2). Additionally, the Court has both subject matter jurisdiction and personal jurisdiction over ASP, and venue is proper in this district. Finally, JJSP appears to have alleged sufficient facts to show that it is entitled to the requested relief.

A federal district court has subject matter jurisdiction over claims that arise under federal law. *See* 28 U.S.C. § 1331. JJSP's claims arise under the Communications Act of 1934, specifically, 42 U.S.C. §§ 553, 605. Accordingly, because JJSP's claims arise under federal law, this Court has subject matter jurisdiction over this action.

A federal district court has personal jurisdiction over a defendant who has sufficient minimum contacts with the forum state, who is subject to the personal jurisdiction of the courts of the forum state, and who has received effective service of process. *See* Fed. R. Civ. P. 4(k)(1)(A); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945). ASP is a commercial business operating and incorporated in the Commonwealth of Virginia. A business operating in Virginia has sufficient minimum contacts with this forum and is subject to the jurisdiction of the courts of Virginia. *See* Va. Code. § 8.01-328.1. Additionally, a corporation in Virginia may be

properly served through the clerk of the State Corporation Commission when its registered agent cannot with reasonable diligence be found at its given address. *See* Va. Code § 13.1-367. The clerk of the State Corporation Commission certified to this Court that he was served after ASP's registered agent could not be found at the listed address on numerous attempts at service and that he forwarded a copy of the Summons and Complaint to ASP at its corporate address. Because ASP has minimum contacts with the forum and was properly served, the Court has personal jurisdiction over ASP.

Venue is similarly proper in this action. ASP's principle place of business is located at 1711 East Main Street, Richmond, Virginia 23223. ASP operated an establishment named Vision at that location, and it is at that location that the events alleged in the Complaint took place. As such, venue is proper in this district both because Defendant ASP is subject to this Court's personal jurisdiction and, therefore, resides in this district, and also because a substantial part of the events giving rise to JJSP's claims occurred in this district. *See* 28 U.S.C. § 1391(b).

Finally, it appears that JJSP has shown it is entitled to relief based on the well-pleaded facts in the Complaint. JJSP alleges that ASP violated 47 U.S.C. §§ 553 and 605. Both statutes apply when a defendant uses both cable and satellite mediums to transmit and/or intercept broadcast programing. *Int'l Cablevision v. Sykes*, 75 F.3d 123, 130-33 (2d Cir. 1996) (discussing legislative intent and the scope and use of sections 605 and 553). First, JJSP alleges that ASP violated section 553 by receiving unauthorized communications from a cable source when it received an unscrambled version of the Event. 47 U.S.C. § 553(a)(1). JJSP also properly alleges that it is a "person aggrieved" under the statute because it had proprietary rights in the Event by virtue of its licensing agreement. Second, JJSP alleges that the ASP's display of the Event constituted the unauthorized publication of a radio or satellite communication in violation of 47 U.S.C. § 605(a). Again, JJSP brings charges as an aggrieved person, which under section 605

requires that the plaintiff have proprietary rights in the intercepted communication. 47 U.S.C. § 605(d)(6).

B. REQUESTED RELIEF

In its Motion as clarified at the hearing, JJSP requests (1) statutory damages in the amount of $10,000.00; (2) enhanced statutory damages in an unspecified amount;[3] (3) costs, expenses, and attorney's fees; and (4) such further relief as the Court deems appropriate. The amount of damages appropriate in this circumstance is within the sound discretion of the Court. *See* 47 U.S.C. § 553(c)(2); *but see* 47 U.S.C. § 605(e)(3) (giving the court discretion to determine statutory award, but requiring an award of litigation costs and attorneys' fees). While JJSP has shown violations under both statutes, courts have precluded double recovery. *See Vt. Microsystems v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998); *Sperry Rand Corp. v. A-T-O, Inc.*, 447 F.2d 1387, 1392-93 (4th Cir. 1971). At the hearing, JJSP indicated that it elects to proceed under 47 U.S.C. § 605 for the purpose of calculating damages.

Courts have used different methods of calculating statutory damages for the violation of 47 U.S.C. § 605. Typically, courts have used per person rates and flat fees. *See Joe Hand Promotions, Inc. v. Bougie, Inc.*, No. 1:09-CV-590, 2010 U.S. Dist. LEXIS 43583, at *5 (E.D. Va. Apr. 12, 2010) (discussing using a flat fee versus a per person rate). Courts have applied per person rates ranging at times from $50 to $250 per person. *See, e.g.*, *Entm't by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.*, No. CV-01-3945, 2002 U.S. Dist. LEXIS 13686, at *3 (E.D.N.Y. May 16, 2002) (requiring defendant to pay $50 per patron); *Bougie*, 2010 U.S. Dist. LEXIS 43583, at *5 (requiring defendant to pay $100 per patron); *Joe Hand Promotions, Inc. v. Fofana*, No. 06 Civ. 2099, 2007 U.S. Dist. LEXIS 58575, at *15-16 (S.D.N.Y. May 30, 2007) (requiring defendant to pay $250 per patron). However, JJSP has not alleged the number of

[3] While the Complaint requests $50,000 in enhanced statutory damages under Count One and $100,000 in enhanced statutory damages under Count Two, it does not make a specific request in the Motion. Statutory damages may be increased by an amount not to exceed $50,000.00 for willful violation of 47 U.S.C. § 553, and $100,000.00 for willful violation of 47 U.S.C. § 605.

patrons present in Vision at the time the Event was broadcast, nor the maximum occupancy of ASP's establishment. As such, the Court cannot apply a per person rate to calculate statutory damages.

Courts' application of the flat fee method has also varied. *See Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc.*, No. 4:10-801-TLW-SVH, 2010 U.S. Dist. LEXIS 136967, at *5 (D.S.C. Oct. 1, 2010) (requiring defendant to pay five times the licensing fee for the event); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1184 (D. Colo. 2008) (awarding a flat $5,000 in damages); *J & J Sports Productions Inc. v. Lara Sport House Corp.*, No. 1:10CV1369, 2011 U.S. Dist. LEXIS 104818, at *6 (E.D. Va. Sep. 15, 2011) (awarding a flat rate of $2,200 based upon the licensing fee). The plaintiff has requested statutory damages of $10,000 to deter future piracy of its events. However, Judge Gibney recently awarded a flat fee of $3,500, approximately 1.5 times the lowest licensing fee of $2,200, to JJSP in their suit against a different defendant for unauthorized interception and broadcast of the same Event on the same date. *See J & J Sports Prods., Inc. v. Prestige Lounge, LLC*, No. 3:13CV616, 2013 U.S. Dist. LEXIS 174293 (E.D. Va. Dec. 11, 2013). As in *Prestige Lounge*, JJSP has failed to allege either the number of patrons present or the maximum occupancy of ASP's establishment. However, unlike the defendant in *Prestige Lounge*, ASP charged a cover fee and engaged in commercial advertising of its unauthorized broadcast of the Event. Accordingly, the Court finds that $5,000 is an appropriate award of statutory damages pursuant to 47 U.S.C. 605(e)(3)(C)(i)(II).

Section 605 also provides for courts to allow additional statutory damages for willful violations commercially benefiting the offender. *See* 47 U.S.C. § 605(e)(3)(C)(ii). JJSP alleges that ASP's actions were necessarily willful because a device or access code was necessary in order to play an unscrambled version of the Event. Courts in this district and elsewhere have agreed with this analysis. *See, e.g.*, *Time Warner Cable v. Googies Luncheonette*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[S]ignals do not descramble spontaneously, nor do television sets connect

themselves to cable distribution systems."); *Prestige Lounge*, 2013 U.S. Dist. LEXIS 174293, at *10.

The Court has the discretion to decline or award enhanced statutory damages up to $100,000 for violation of 47 U.S.C. § 605(e)(3)(C)(ii). Courts have assessed enhanced damages for willfulness in a full range of amounts. *See, e.g., J&J Sports Productions Inc., v. Great Latin Restaurants*, No. 1:11CV459, 2011 U.S. Dist. LEXIS 137619, at *6 (E.D. Va. Nov. 22, 2011) (granting $100,000 in enhanced statutory damages*); J&J Sports Productions Inc., v. New Horizon Group, Inc.*, No. 1:11CV1223-LMB-TCB, 2012 U.S. Dist. LEXIS 188527 (E.D. Va. May 14, 2012) (awarding $5,000 in enhanced statutory damages). Courts have considered factors such as: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; and defendant's requiring a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 383 (E.D.N.Y. 2008). Courts have also considered percentage of capacity filled, *Lara Sport House*, 2011 U.S. Dist. LEXIS 104818, at *7, and total number of patrons, *see Great Latin*, 2011 U.S. Dist. LEXIS 137619, at *6. When considering damages for a first time violation, courts should not set damages so high that it would put the restaurant out of business. *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411, 2006 U.S. Dist. LEXIS 5010, at *5 (S.D.N.Y. Feb. 7, 2006).

JJSP does not allege that ASP is a repeat offender, and the Court has uncovered no other action against ASP in this district. In its filings, JJSP merely hypothesized that ASP may have used word of mouth advertising; however, at the hearing, JJSP provided to the Court documentation that ASP's broadcast of the Event was advertised on Twitter prior to September 17, 2011. Additionally, JJSP properly alleged that ASP applied a $10 cover charge to male patrons of its establishment during display of the Event. In light of these aggravating factors, the Court

finds that $15,000 is an appropriate enhanced statutory damages award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

Because JJSP has elected to proceed under 47 U.S.C. § 605(e)(3)(C)(ii), the Court must award reasonable attorney's fees and litigation costs in this matter. *See* 47 U.S.C. § 605(e)(3)(B). JJSP submitted the affidavit of W. Brian McCann as evidence of the work done and the reasonable value of that work. Mr. McCann worked at a rate of $200 per hour and spent 9.2 hours working on the case. The Court finds the hourly rate and number of hours to be reasonable. The total comes to $1,840 in attorney fees. The additional costs amount to $481.68. These consist of $400 for filing fees, $55 for process server and State Corporation Commission fees, $19.40 for copying, and $7.28 in postage. These costs appear to be reasonable, and therefore, the Court will award JJSP fees costs and attorney's fees in the amount of $2,231.68.

**CONCLUSION**

For the reasons stated above, the Court will GRANT JJSP's Motion and AWARD damages in the aggregate amount of $22,321.68 for ASP's violation of 47 U.S.C. § 605, comprising of $5,000.00 in statutory damages, $15,000.00 in enhanced statutory damages, and $2,321.68 in attorney's fees and litigation costs.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record. An appropriate Order will issue.

/s/
James R. Spencer
United States District Judge

ENTERED this 19th day of February 2014.